# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOYCE M. WILLIAMS,**

      **Plaintiff,**

    v.                        Case No. 18-CV-354

**FARMERS NEW WORLD LIFE INSURANCE COMPANY,**

      **Defendant.**

## FINAL PRETRIAL ORDER

On March 15, 2022, the court held a final pretrial conference. Appearing for the plaintiff **Joyce M. Williams** were attorneys **Gregory J. Cook** and **William C. Gleisner, III**. Appearing for the defendant **Farmers New World Life Insurance Company** were attorneys **Asim K. Desai** and **Margaret M. Drugan**.

A jury trial is scheduled to begin on April 11, 2022. The court has set aside five days for trial.

Based on the court's consideration of the parties' pretrial reports and the statements of counsel, for the reasons more fully stated on the record, the court enters the following Order, which shall govern the trial in this matter:

A. A seven-person jury will be selected. Its verdict shall be unanimous.

B. The court will conduct the voir dire of the entire pool. Following voir dire, the court will entertain motions to strike for cause. From the first 13 remaining prospective jurors the parties will each exercise three peremptory strikes per side to arrive at a final seven-person jury.

C. The jurors will not be permitted to ask questions of witnesses.

D. The jurors will be permitted to take notes.

E. The parties shall prepare a single joint exhibit list. The exhibits shall be numbered sequentially. No exhibit shall be listed more than once. Any "compilations" of exhibits should be broken out so that each exhibit is individually numbered. Parties should consider whether lengthy exhibits can be limited to only the portions that are relevant and that the party will seek to admit.

F. Exhibits shall be compiled into tabbed binders. One set shall be for the court; one set will be for the witness; and then as many sets as the parties desire for their personal use. The set for the witness will be the "official" set that will be received by the court.

G. All exhibits received in evidence will be sent to the jury room during jury deliberation unless a specific objection to the exhibit or portion thereof is raised by a party following the conclusion of the trial. The jury will receive a copy of

the jury instructions, and each juror will receive a copy of the special verdict for their deliberations.

H. If a party wishes to publish an exhibit to the jury, the party must use demonstrative means to make that the exhibit is visible to all jurors simultaneously and/or provide each juror with a paper copy of the exhibit.

I. Upon request, made at least one week before trial, the court should be able to provide any of the following technology: a projector that may be connected to counsel's laptop computers; a screen; and a document camera (*e.g.*, an Elmo). Parties wishing to use any additional technology must provide it themselves. Parties should contact the court's deputy clerk at 414-297-3964 or linda_zik@wied.uscourts.gov with any questions to make arrangements regarding court-supplied technology or to schedule a time to set up or test any hardware.

J. Each party is responsible for ensuring the appearance of any witness the party intends to call to testify.

K. Only a single attorney for each party shall examine or cross-examine any individual witness.

L. Only if absolutely necessary are parties to ask for a side-bar conference if the jury is present. Ordinarily, if additional argument or explanation is necessary

regarding an objection, the objection should be raised, and the party should request to be heard at the next break.

M. Trial days shall begin at 8:30 A.M., with a break in the morning, roughly one hour for lunch, an afternoon break, and court will adjourn for the day at 5:00 P.M.

N. Currently, masks are not required in the courthouse. *See* General Order Regarding COVID-19 Mask Policy (March 7, 2022), available at https://www.wied.uscourts.gov/news/update-general-order-regarding-covid-19-mask-policy-1. Requirements for masking in the public areas of the courthouse vary depending on the Centers for Disease Control and Prevention's COVID-19 Community Levels, and therefore masking requirements may change between now and trial. Parties should review the court's website, www.wied.uscourts.gov, for current protocols. Even if masks become required in the public spaces in the building, the court does not anticipate requiring masks in the courtroom.

O. As to the defendant's motion in limine to exclude the plaintiff's expert (ECF No. 87), the motion is untimely. Following multiple extensions, the court required any motion challenging an expert to be filed no later than July 9, 2019." (ECF No. 27.) Having failed to comply with this court's order, Farmers has forfeited its challenge to James T. O'Donnell's testimony, and the motion is

denied on that basis. *See Terry v. Woller*, No. 08-4063, 2010 U.S. Dist. LEXIS 128953, at *4 (C.D. Ill. Dec. 7, 2010). Nonetheless, the court recognizes that it has an independent duty under Fed. R. Evid. 702 to prevent unreliable opinions from being presented to the jury. However, courts are afforded much discretion in applying *Daubert*'s flexible framework and the ultimate admission of expert testimony. *See C.W. v. Textron, Inc.*, 807 F.3d 827, 835 (7th Cir. 2015). Based on the information contained in his report, O'Donnell is "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Fed. R. Evid. 702. His "scientific, technical, or other specialized knowledge will help the trier of fact … to determine a fact in issue," Fed. R. Evid. 702(a), including, for example, the materiality of the Farmer's inquiry regarding an applicant's marijuana use or the accuracy of the notation in Tajah Williams's medical records indicating she regularly used marijuana. The relevant opinions in O'Donnell's report appear to be based on sufficient facts and data and to be the product of sufficiently reliable principles and methods. Finally, it appears that O'Donnell reliably applied those principles and methods to the facts of this case. Consequently, in light of Farmers' failure to timely challenge O'Donnell's opinions, the court will err on the side of allowing O'Donnell's opinions. The court nonetheless finds that it would be an abuse of discretion to permit O'Donnell to testify that Tajah

Williams was not a chronic user of marijuana because "she was a college student and held two jobs." (ECF No. 87 at 5.) Such an opinion falls far short of the standards required under Rule 702 in that there is no evidence that O'Donnell considered, for example, Tajah Williams's functioning in school or at work or considered the duration of qualitative effects of marijuana use in reaching his opinion. As to the opinions contained in his report (ECF No. 27-3 at 2-3), the court finds it would not be an abuse of discretion to permit such testimony at trial. Accordingly, Williams's motion to strike the defendant's motion in limine (ECF No. 93) is granted in part.

P. As to the defendant's motion in limine to exclude the plaintiff's claim for emotional distress (ECF No. 88), the motion is granted. The record demonstrates that the plaintiff unequivocally waived any such claim, and the plaintiff acknowledged as much at the final pretrial conference.

Q. As to the plaintiff's motion in limine (ECF No. 90), the motion is denied. The plaintiff's reliance on Wis. Stat. § 631.11(4)(b) is misplaced. The evil the statute seeks to prevent is a situation where an insurer learns of a basis for rescinding a policy but then sits on that information and continues to collect premiums, all the while knowing that it has a basis to deny coverage should a claim arise. Such conduct would prejudice an insured by misleading the insured as to her coverage and denying her the opportunity to seek other coverage. The present

situation involves a review of an application following a claim during the contestability period of a life insurance policy. *See* Wis. Stat. § 632.46(1). Because the information in the "Broyles Report" was learned after the claim (which the court understands is the basis for the plaintiff's objection), the time limits in Wis. Stat. § 631.11(4)(b) are inapplicable. Insofar as Wis. Stat. § 631.11(4)(b) may impose an obligation to disclose information learned in the claims investigation process, *cf. Broege v. Lincoln Nat'l Life Ins. Co.*, No. 11-cv-566-slc, 2012 U.S. Dist. LEXIS 196686, at *11-15 (W.D. Wis. Apr. 9, 2012), the plaintiff has not shown that the defendants delayed in disclosing the Broyles Report. Rather, the plaintiff's argument, as clarified at the final pretrial conference, is that the Broyles Report must be excluded because it relies on information that was acquired more than 120 days after the application. Because this argument misunderstands Wis. Stat. § 631.11(4)(b), the plaintiff's motion in limine is denied.

R. Defendant shall brief the issue regarding the existence of a contract vis-à-vis the plaintiff's allegation that the insured did not sign the application no later

than **March 23, 2022**. Plaintiff shall respond by **March 30, 2022**.

**SO ORDERED.**

Dated at Milwaukee, Wisconsin this 15th day of March, 2022.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge