UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOYCE M. WILLIAMS,

    Plaintiff,

v.                                            Case No. 18-CV-354

FARMERS NEW WORLD LIFE INSURANCE CO.,

    Defendant.

## DECISION AND ORDER

**1. Background**

Tajah Williams was murdered on December 16, 2016. When her mother, Joyce Williams, sought to collect on the life insurance policy that Tajah's grandmother, Jacqueline Williams, had purchased for her, the insurer, Farmers New World Life Insurance Co., denied the claim.

Joyce sued, and the matter proceeded to a jury trial. Following a four-day trial the jury returned its special verdict rejecting Farmers's recission defense, finding that Famers breached the insurance contract, and awarding Joyce $100,000 in damages. (ECF No. 124.) The jury rejected Joyce's claim that Farmers acted in bad faith. (ECF No. 124.) The Clerk entered judgment accordingly. (ECF No. 125.)

Joyce now asks the court, pursuant to Rule 59(3), to alter or amend that judgment to award her the $150,000 face value of the policy *in addition to* the $100,000 in damages the jury awarded as damages, as well as "restorative damages" that include all her attorney fees and expert witness costs. (ECF Nos. 133, 134.)

2. **Rule 59(e)**

"The purpose of Federal Rule of Civil Procedure 59(e) is to allow a party to bring to the district court's attention a manifest error of fact or law so that it may correct, or at least address, the error in the first instance." *A&C Constr. & Installation, Co. WLL v. Zurich Am. Ins. Co.*, 963 F.3d 705, 709 (7th Cir. 2020). The "motion can be granted only where the movant clearly establishes: '(1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.'" *Barrington Music Prods. v. Music & Arts Ctr.*, 924 F.3d 966, 968 (7th Cir. 2019) (quoting *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013)). It is not "a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment." *Id.* (quoting *Beyrer*, 722 F.3d at 954).

3. **Value of the Policy**

Joyce argues that, because Farmers's recission defense failed, she is entitled to the $150,000 face value of the policy as a matter of law. (ECF No. 134 at 2-4.) She points to a treatise that states, "If a party brings a rescission action that proves unsuccessful and the

2
Case 2:18-cv-00354-WED    Filed 06/23/22    Page 2 of 13    Document 145

contract is upheld, the contract and all of the parties' rights and obligations, including the right to claim damages for breach, remain." (ECF No. 134 at 4 (quoting 2 Contract Law in Wisconsin Ch. 14 (Wisconsin Bar – Pinnacle Ed. 2021) at 13/27).)

Farmers, however, did not bring a rescission action. Joyce explicitly acknowledges as much. (ECF No. 134 at 3 ("FNWL never brought a rescission action ….").) Rather, it asserted rescission as an affirmative defense to Joyce's breach of contract claim. *See Williams v. Farmers New World Life Ins. Co.*, No. 18-CV-354, 2018 U.S. Dist. LEXIS 85580, at *5 (E.D. Wis. May 22, 2018). Thus, the plaintiff retained the burden to prove her breach of contract claim. She was required to prove: (1) the existence of a contract; (2) a breach of the contract; and (3) damages as a result of that breach. *Brew City Redevelopment Grp., LLC v. Ferchill Grp.*, 2006 WI App 39, ¶11, 289 Wis. 2d 795, 807, 714 N.W.2d 582, 588.

The authority she cites in support of her position (ECF No. 134 at 4 (citing *Bischoff v. Hustisford State Bank*, 195 Wis. 312, 320-21, 218 N.W. 353, 357 (1928); *AVL Powertrain Eng'g, Inc. v. Fairbanks Morse Engine*, 178 F. Supp. 3d 765, 777 n.11 (W.D. Wis. 2016))) is not to the contrary. The cases cited involved instances where a plaintiff pled breach of contract as an alternative to rescission. The courts held that, if a claim for rescission failed, the plaintiff may proceed with a breach of contract claim. *Bischoff*, 195 Wis. at 320-21, 218 N.W. at 357 ("The pleader seeks relief in the alternative, that is, if rescission be denied in the first cause of action then that he have recovery under the contract thus

3

established in the second cause of action"); *AVL Powertrain Eng'g*, 178 F. Supp. 3d at 777 n.11 ("If a party brings a rescission action that proves unsuccessful and the contract is upheld, the contract and all of the parties' rights and obligations, including the right to claim damages for breach, remain."[1]). The cases do not address the situation here—where a plaintiff alleged breach of contract and a defendant asserted rescission as an affirmative defense—much less suggest that a defendant's failure to prove a basis for rescission relieves a plaintiff of a duty to prove a breach of contract.

There was no dispute that a contract existed: either Tajah signed the applications or Farmers's agent signed Tajah's name, thus binding Farmers. *See Williams v. Farmers New World Life Ins. Co.*, No. 18-CV-354, 2022 U.S. Dist. LEXIS 59477, at *1-3 (E.D. Wis. Mar. 31, 2022). Therefore, the court did not present to the jury any question as to whether a contract existed. But the special verdict asked the jury to determine the latter two elements of a breach of contract claim—whether Farmers breached the contract (Question 6 on the special verdict form) and the amount of damages, if any, Joyce suffered as a result (Question 7). (ECF No. 124 at 2.)

Joyce's counsel did not object to Question 7 before the court presented it to the jury. As such, she has forfeited any objection to the question. *See Frazier v. Boyle*, 206 F.R.D. 480, 493 (E.D. Wis. 2002). Likewise, she forfeited any objection to the jury instructions by not objecting to them. *See* Fed. R. Civ. P. 51; *Green v. Junious*, 937 F.3d

---

[1] This is stated as being a quotation from *Bischoff*. While this statement is consistent with the *Bischoff* decision, the court cannot identify the precise language in that decision.

1009, 1015 (7th Cir. 2019); *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 733 (7th Cir. 2004)

Joyce's counsel's explanation for not objecting to Question 7 is contradictory, or at least confusing. She now asserts that she did not object because:

> There is nothing in Question 6 or 7, or in the accompanying instructions, which suggests that the Jury has the power to rewrite the insurance policy between FNWL and Joyce Williams, any more than a Court would have that power. Plaintiff's counsel did not object to Questions 6 and 7 because Plaintiff's counsel felt secure in the Law of Contracts in Wisconsin.

(ECF No. 143 at 5.) This statement suggests that she felt that the question was immaterial. The jury could answer whatever it wanted, but she would always get the $150,000 face value of the policy. In other words, Question 7 simply asked the jury to fill in the face value of the policy. Yet Joyce did not ask the court for a judgment as a matter of law. *See* Fed. R. Civ. P. 50(a).

More significantly, Joyce is *not* arguing that the court should, in effect, change the answer to Question 7 to $150,000. Rather, Joyce argues that she is entitled to the $150,000 face value of the policy *plus* the $100,000 the jury awarded in response to Question 7. Joyce argues that the $100,000 that the jury awarded reflects damages to which she is entitled in addition to the face value of the policy.

However, there is absolutely no support for this position. Even Joyce's stated reason for not objecting to Question 7 is inconsistent with an understanding that Question 7 was asking the jury to assess only any damages Joyce sustained beyond the

5

value of the policy. It is clear that at trial Joyce understood Question 7 to be asking the jury to determine her damages *inclusive of* the sum that Farmers wrongfully failed to pay under the policy. In closing Joyce's counsel argued:

> The next question asks, under question seven, if you've answered question six yes, what amount of damages, if any, will compensate Joyce Williams for Farmers New World Life Insurance Company's breach of insurance contract? The policy was for $150,000, the breach is $150,000. I submit to you the answer should be $150,000 to tell this insurance company by that answer that they owe on the contract.

(ECF No. 127 at 33:10-16.) Defense counsel similarly argued, "If you do find breach of the contract, the maximum number you can put in there is the contract benefit which is $150,000." (ECF No. 127 at 85:10-13.)

But most importantly, the jury clearly understood that Question 7 included the amount the defendant wrongfully failed to pay under the policy. During its deliberations the jury asked, "If we say 'yes' to Question 6 do we need to award the entire policy amount of $150k? Or can we set a different award[?]" (ECF No. 123 at 2.) The phrasing of the question made clear that the jury was not like that in *The Verdict* where the jury asked, "Are we limited on the size of the award? … [A]re we permitted to award an amount greater than the plaintiff asked for?" This jury was asking if it could award *less* than the $150,000 that the plaintiff requested.

Upon hearing this question from the jury, Joyce's counsel did not argue that Question 7 was actually asking the jury to assess only the damages that Joyce sustained in excess of the face value of the policy. Nor did counsel argue that Joyce was entitled to

6

the face value of the policy as a matter of law. After the court discussed the jury's question with counsel for both parties, all were in agreement that the proper response to the jury's question was: "You can award any amount that you conclude is supported by the evidence." (ECF No. 123 at 2.) And that is what the jury was told. (ECF No. 123 at 2.)

Although the jury's verdict is somewhat curious, the court recognizes reasonable bases for the verdict. Because a rational connection existed between the evidence and the jury's award, the court cannot set aside the jury's verdict. *Barrington Music Prods.*, 924 F.3d at 968. And, significantly, neither party asks the court to do so.

The court emphasizes that the only argument that Joyce makes is that she is entitled to recover the $150,000 face value of the policy *and* the $100,000 in damages that the jury found she sustained as a result of Farmers's breach, for a total of $250,000. (*See, e.g.*, ECF Nos. 134 at 12 ("Plaintiff submits she should receive the policy benefit together with the breach damages found by the jury, which comes to $250,000 …."); 143 at 6 (heading "The Breach of Contract Damages are in Addition to the Policy Face Value.").) In other words, it is Joyce's position that if the jury had answered Question 7 as her attorney argued in closing it should and entered $150,000, she would be entitled to $300,000. Because no basis exists for that argument, this aspect of Joyce's motion will be denied.

### 4. "Restorative" Damages

#### 4.1. Attorney Fees and Expert Costs

Joyce acknowledges the American Rule that each party to litigation is generally responsible for its own attorney fees and expert witness costs. (ECF No. 134 at 11.) However, she points to a treatise on Wisconsin contract law to argue that she is entitled to restorative damages in addition to contract damages for the expenses she incurred "to protect [her] interests." (ECF No. 134 at 11 (quoting Contract Law in Wisconsin Ch. 13 (Wisconsin Bar – Pinnacle Ed. 2021) at 8/33).)

She argues that, because Farmers refused to pay her claim, she had no option but to sue. Then Farmers "forced the Plaintiff to litigate every point in the case," "never offered to settle the dispute" (ECF No. 134 at 11), and engaged in "Rambo tactics" (ECF No. 143 at 11-15). She argues that she should be able to recover her attorney fees and expert costs because Farmers's "intransigence forced" her to incur those costs. (ECF No. 134 at 11.)

"As a general proposition, attorney fees are not allowable unless a statute or an agreement of the parties provides otherwise." *Meas v. Young*, 142 Wis. 2d 95, 101, 417 N.W.2d 55, 57 (Ct. App. 1987). Wisconsin, however, recognizes an exception "where the wrongful acts of the defendant have involved the plaintiff in litigation with others, or placed him in such relation with others as to make it necessary to incur expense to protect his interest, such costs and expense should be treated as the legal consequences

of the original wrongful act." *Weinhagen v. Hayes*, 179 Wis. 62, 65, 190 N.W. 1002, 1003 (1922).

Joyce's argument would represent a complete abrogation of the American Rule. She is obviously correct that, if Farmers had paid the claim, she would have avoided all her litigation costs, and in that sense Farmers's actions caused her to incur those expenses. However, that is true in virtually every case; almost all litigation could be avoided if the defendant simply paid what the plaintiff demands. But one reason it is inappropriate to shift the plaintiff's litigation costs to the defendant is because there is nothing "wrongful" about a defendant defending itself.

Joyce's reply amounts to an argument that the court should order Farmers to pay her attorney fees and expert witness costs effectively as a sanction for Farmers's failure to engage in settlement discussions, having "endeavored to surprise Plaintiff with irrelevant 'hearsay on hearsay,'" and for having stricken two black jurors without an adequate basis, in violation of *Edmonson v. Leesville Concrete*, 500 U.S. 614 (1991). (ECF No. 143 at 11-15.) Joyce offers no authority for this radical argument.

In denying Joyce's bad faith claim, the jury rejected Joyce's assertion that Farmers's denial of the claim was "wrongful." She has failed to show that the narrow exception to the American Rule recognized in *Weinhagen* applies. Consequently, there is no basis to award Joyce the attorney fees or expert witness costs she incurred in prosecuting this action.

### 4.2. Interest

Under Wisconsin law, an insurer must pay a claim within 30 days. Wis. Stat. § 628.46(1). If it fails to pay a claim within 30 days it must pay interest on the amount of the unpaid claim unless the "insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer." Wis. Stat. § 628.46(1). "Reasonable proof means that amount of information which is sufficient to allow a reasonable insurer to conclude that it may not be responsible for payment of a claim." *Froedtert Mem'l Lutheran Hosp., Inc. v. Nat'l States Ins. Co.*, 2009 WI 33, ¶59, 317 Wis. 2d 54, 81, 765 N.W.2d 251, 264 (brackets and internal quotation marks omitted). "Generally, reasonable proof is equated with whether coverage is considered 'fairly debatable.'" *Id.* at ¶59 (quoting *Kontowicz v. Am. Standard Ins. Co.*, 2006 WI 48, ¶48, 290 Wis. 2d 302, 327, 714 N.W.2d 105, 117).

When Joyce made her claim under the life insurance policy, the policy had been in effect for only a few months and was therefore not incontestable. *See Williams v. Farmers New World Life Ins. Co.*, No. 18-CV-354, 2019 U.S. Dist. LEXIS 173561, at *2 (E.D. Wis. Oct. 7, 2019). Farmers reviewed Tajah's medical records and learned that, a few months before the policy was issued, she visited the emergency room at a local hospital. Notes from that visit stated that Tajah admitted to daily marijuana use. *Id.* at *3. But Tajah's life insurance application stated that she had never used marijuana. *Id.* at *1. Under Farmers's underwriting guidelines, if Tajah had been a recent daily marijuana

user, it would not have issued the policy. *Id.* at *3. Therefore, it concluded that the application contained a material misrepresentation and that the policy was null and void. *Id.* at *3.

Jacqueline contended that Tajah did not fill out the application. In fact, Tajah was not even present when Farmers's agent completed the application and electronically signed Tajah's name. Therefore, any misrepresentation was not attributable to Tajah.

In support of Jacqueline's testimony that Tajah was not present at the time of the application, Joyce points to a question on the report that the agent was required to submit in conjunction with the sale of the policy. The question asked: "Were all proposed insured/owners, including children, present during the completion of the application?" (ECF No. 134 at 8.) The question was unanswered. (ECF No. 134 at 8.) Farmers, however, interviewed the agent, who said that Tajah was present and signed the application.

Importantly, Tajah also denied having ever used marijuana on a second part of the application, completed a few days later. This second part of the application was purportedly signed by Tajah when a nurse met with her to perform a medical exam and collect her blood and urine. Thus, even accepting Jacqueline's statement that Tajah was not present, and therefore did not complete and sign the initial application, she obviously was present when the nurse performed the medical exam and drew her blood and obtained a urine sample from her. Given the lack of any apparent motive for the

nurse to falsify the second part of the application, it was reasonable for Farmers to conclude that Tajah signed it, denying that she used marijuana.

It was also reasonable for Farmers to rely on the note in Tajah's medical records indicating that she reported using marijuana daily. It was not a stray remark but relevant to the care and treatment Tajah received. Tajah's use of marijuana was corroborated by a medical examiner report prepared after she was killed, which stated that marijuana was found in Tajah's purse and noted some evidence that she was driving around looking for a place to smoke marijuana when she was killed. (ECF No. 114 at 4.) Although the details from the medical examiner report were excluded from trial as hearsay, the report is nonetheless relevant in assessing whether it was reasonable for Farmers to deny the claim.

In light of this evidence, Farmers reasonably concluded that Tajah's application contained a material misrepresentation regarding her use of marijuana. Indeed, the jury so found in answering Question 1 on the special verdict form. Consequently, Joyce is not entitled to prejudgment interest under Wis. Stat. § 628.46(1). Joyce does not make an argument for prejudgment interest under other law. *See Froedtert Mem'l Lutheran Hosp.*, 2009 WI 33, ¶67, 317 Wis. 2d 54, 85, 765 N.W.2d 251, 266 (citing *Olguin v. Allstate Ins. Co.*, 71 Wis. 2d 160, 168, 237 N.W.2d 694 (1976)).

**IT IS THEREFORE ORDERED** that Joyce Williams's Motion to Alter or Amend Judgment (ECF No. 133) is **denied**.

Dated at Milwaukee, Wisconsin this 23rd day of June, 2022.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge